**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  16-cv-20413-JEM**

GARY COOPER, on behalf of himself and all
others similarly situated,

        Plaintiff,

            v.

PENNYMAC LOAN SERVICES, LLC, QBE
SPECIALTY INSURANCE COMPANY, QBE
FIRST INSURANCE AGENCY, INC., and
PRAETORIAN INSURANCE COMPANY,

        Defendants.

_____/

**DEFENDANTS QBE SPECIALTY INSURANCE COMPANY, QBE FIRST INSURANCE
AGENCY, INC., AND PRAETORIAN INSURANCE COMPANY'S
MOTION TO DISMISS THE CLASS ACTION COMPLAINT
<u>WITH SUPPORTING MEMORANDUM OF LAW</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL ALLEGATIONS ................................................................. 2

      A.    Overview of Lender-Placed Insurance and Plaintiff's Mortgage ............. 2

      B.    Plaintiff's Insurance Experience ................................................. 2

      C.    The QBE Defendants ................................................................. 4

      D.    The QBE Defendants' Alleged "Scheme" with PennyMac ....................... 4

ARGUMENT ................................................................. 5

I.      PLAINTIFF'S CLAIMS HAVE ALREADY BEEN RESOLVED BY A
FLORIDA STATE COURT AND ARE THUS BARRED BY THE *ROOKER-
FELDMAN* DOCTRINE AND COLLATERAL ESTOPPEL ........................... 5

II.     THE FILED-RATE DOCTRINE BARS PLAINTIFF'S CLAIMS PREMISED
ON LPI ISSUED BY PRAETORIAN ................................................. 6

III.    PLAINTIFF LACKS STANDING TO ASSERT CLAIMS ON BEHALF OF HIS
OMNIBUS SUBCLASS OF BORROWERS WHO HAVE MORTGAGE
CONTRACTS WITH, AND SERVICED BY, UNRELATED SERVICERS ................ 10

IV.    PLAINTIFF FAILS TO STATE ANY CLAIMS UNDER RULE 12(B)(6) ................. 12

      A.    Plaintiff Fails to State Claims for Tortious Interference with a
Business Relationship or Unjust Enrichment Because the QBE
Defendants' Conduct Was Authorized by Plaintiff's Mortgage ............... 12

      B.    Plaintiff Fails to State a RICO Claim Under Section 1962(c) ................. 15

              1.    Plaintiff Alleges No Deceptive Conduct and Thus No Fraud ....... 16

              2.    Plaintiff Fails to Allege Causation ................................. 19

              3.    Plaintiff's RICO Allegations Do Not Satisfy Rule 9(b) ............. 20

      C.    Plaintiff Fails to State a RICO Claim Under Section 1962(d) ................. 20

CONCLUSION ................................................................. 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarez v. Att'y Gen.*,
   679 F.3d 1257 (11th Cir. 2012).................................................................................. 5

*Am. Safety Ins. Serv., Inc. v. Griggs*,
   959 So. 2d 322 (Fla. Dist. Ct. App. 2007)............................................................... 14

*AMEC Civil, LLC v. PTG Constr. Servs. Co.*,
   106 So. 3d 455 (Fla. Dist. Ct. App. 1987)................................................................. 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 12

*Beck v. Prupis*,
   162 F.3d 1090 (11th Cir. 1998)............................................................................... 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 12

*Berene v. Nationstar Mortg. LLC*,
   No. 14-cv-61153 (S.D. Fla. Feb. 5, 2016)................................................................ 5

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
   116 F.3d 1364 (11th Cir. 1997)............................................................................... 20

*Burns v. Rice*,
   39 F. Supp. 2d 1350 (M.D. Fla. 1998), *aff'd*, 210 F.3d 393 (11th Cir. 2000)............................ 3

*Circeo-Loudon v. Green Tree Servicing, LLC*,
   No. 14-21384, 2014 WL 4219587 (S.D. Fla. Aug. 25, 2014)..................................... 13, 18, 19

*Clarizia v. Ocwen Fin. Corp.*,
   No. 1:13-CV2907, 2016 WL 439018 (S.D.N.Y. Feb. 2, 2016) ................................. 8

*Cohen v. Am. Sec. Ins. Co.*,
   735 F.3d 601 (7th Cir. 2013) ........................................................... 14, 15, 16, 18

*Curtis v. Cenlar FSB*,
   No. 13-3007, 2013 WL 5995582 (S.D.N.Y. Nov. 12, 2013) ................................... 8

*Decambaliza v. QBE Holdings, Inc.*,
   No. 13-cv-286, 2013 WL 5777294 (W.D. Wis. Oct. 25, 2013)................................. 8

*Degutis v. Fin. Freedom, LLC,*
    978 F. Supp. 2d 1243 (M.D. Fla. 2013) ................................................................. 13

*In re Eaton Vance Corp. Sec. Litig.,*
    220 F.R.D. 162 (D. Mass. 2004) ............................................................................. 11

*Edwards v. Green Tree Servicing, LLC,*
    No. 5:15CV148, 2015 WL 6777463 (N.D. Fla. Oct. 22, 2015)................................. 16

*Ellsworth v. U.S. Bank, N.A.,*
    908 F. Supp. 2d 1063 (N.D. Cal. 2012) .................................................................... 7

*Feaz v. Wells Fargo Bank, N.A.,*
    745 F.3d 1098 (11th Cir. 2014)........................................................................ 14, 15

*Forsythe v. Sun Life Fin., Inc.,*
    417 F. Supp. 2d 100 (D. Mass. 2006) ...................................................................... 11

*Gibson v. Chase Home Fin., LLC,*
    No. 8:11-cv-1302, 2011 WL 6319401 (M.D. Fla. Dec. 16, 2011)........................... 13

*Gustafson v. BAC Home Loans Servicing, LP,*
    No. SACV 11-915, 2012 WL 7051318 (C.D. Cal. Dec. 20, 2012)........................... 17

*Gustafson v. BAC Home Loans Servicing, LP,*
    No. SACV 11-915, 2012 WL 7071488 (C.D. Cal. Dec. 26, 2012)........................... 18

*Haddock v. Countrywide Bank, NA,*
    No. 14-6452, 2015 WL 9257316 (C.D. Cal. Oct. 27, 2015)...................................... 7

*Hamilton v. SunTrust Mortg. Inc.,*
    6 F. Supp. 3d 1300 (S.D. Fla. 2014)........................................................................ 15

*Horne v. Potter,*
    392 F. App'x 800 (11th Cir. 2010).............................................................................. 8

*Jackson v. BellSouth Telecomms.,*
    372 F.3d 1250 (11th Cir. 2004)................................................................................ 20

*Jackson v. U.S. Bank, N.A.,*
    44 F. Supp. 3d 1210 (S.D. Fla. 2014)....................................................................... 15

*Lindquist v. Farmers Ins. Co. of Ariz.,*
    No. 06-597, 2008 WL 343299 (D. Ariz. Feb. 6, 2008).............................................. 10

*Lyons v. Litton Loan Servicing LP,*
    No. 1:13-cv-513, 2016 WL 415165 (S.D.N.Y. Feb. 2, 2016)...................................... 7

iii

*M.C.G. v. Hillsborough Cty. Sch. Bd.*,
   927 So. 2d 224 (Fla. Dist. Ct. App. 2006)................................................................ 6

*Makro Capital of Am., Inc. v. UBS AG*,
   543 F.3d 1254 (11th Cir. 2008)............................................................................... 8

*Maxcess, Inc. v. Lucent Techs., Inc.*,
   433 F.3d 1337 (11th Cir. 2005)............................................................................... 3

*MDT Pers., LLC v. Camoco, LLC*,
   No. 8:10-cv-2545, 2010 WL 5535066 (M.D. Fla. Dec. 8, 2010)........................... 13

*Meyer v. OneWest Bank F.S.B.*,
   91 F. Supp. 3d 1177 (C.D. Cal. 2015).................................................................... 18

*Miller v. Wells Fargo Bank, N.A.*,
   994 F. Supp. 2d 542 (S.D.N.Y. 2014).................................................................. 7, 8

*Montoya v. PNC Bank, N.A.*,
   No. 14-20474, 2014 WL 4248208 (S.D. Fla. Aug. 27, 2014)................................ 15

*Morales v. Att'ys' Title Ins. Fund, Inc.*,
   983 F. Supp. 1418 (S.D. Fla. 1997)......................................................................... 8

*Morris v. Green Tree Servicing, LLC*,
   No. 2:14-CV-01998, 2015 WL 4113212 (D. Nev. July 8, 2015)........................... 16

*In re Mortg. Lender Force-Placed Ins. Litig.*,
   895 F. Supp. 2d 1352 (J.P.M.L. 2012) (Mem.)................................................. 11, 12

*Oginsky v. Paragon Props. of Costa Rica LLC*,
   784 F. Supp. 2d 1353 (S.D. Fla. 2011).................................................................. 20

*Roberts v. Wells Fargo Bank, N.A.*,
   No. 12-200, 2013 WL 1233268 (S.D. Ga. Mar. 27, 2013) ..................................... 9

*Rothstein v. Balboa Insurance Co.*,
   794 F.3d 256 (2d Cir. 2015)........................................................................... passim

*Se. Fidelity Ins. v. Rice*,
   515 So. 2d 240 (Fla. Dist. Ct. App. 1987).............................................................. 6

*Simpson v. Sanderson Farms, Inc.*,
   744 F.3d 702 (11th Cir. 2014)............................................................................... 19

*Singleton v. Wells Fargo Bank, N.A.*,
   No. 12-216, 2013 WL 5423917 (N.D. Miss. Sept. 26, 2013) ................................. 8

iv

*Smith v. SunTrust Mortg. Inc.*,
    No. 13-0739, 2013 WL 5305651 (C.D. Cal. Sept. 16, 2013)................................................... 14

*Taffet v. Southern Co.*,
    967 F.2d 1483 (11th Cir. 1992)....................................................................................................... 6

*In re Title Ins. Antitrust Cases*,
    702 F. Supp. 2d 840 (N.D. Ohio 2010) ......................................................................................... 8

*Trevathan v. Select Portfolio Servicing, Inc.*,
    No. 15-61175, 2015 WL 6913144 (S.D. Fla. Nov. 6, 2015)............................................ 7, 9, 10

*Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*,
    892 F. Supp. 1503 (S.D. Fla. 1995)........................................................................................... 7, 9

*United States v. Ward*,
    486 F.3d 1212 (11th Cir. 2007).................................................................................................... 16

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009).................................................................................................... 14

*Velardo v. Fremont Inv. & Loan*,
    298 F. App'x 890 (11th Cir. 2008)................................................................................................. 5

*Wegoland Ltd. v. NYNEX Corp.*,
    27 F.3d 17 (2d Cir. 1994).............................................................................................................. 7

*Wilson v. EverBank, N.A.* ("*Wilson I*"),
    77 F. Supp. 3d 1202 (S.D. Fla. 2015)............................................................................ 18, 19, 20

*Wilson v. EverBank, N.A.* ("*Wilson II*"),
    No. 14-22264, 2015 WL 1600549 (S.D. Fla. Apr. 9, 2015) ...................................................... 19

## Statutes

18 U.S.C. § 1962(c) .......................................................................................................................... 15

Fla. Stat. §§ 627 ................................................................................................................................... 8

Fla. Stat. Ch. 627................................................................................................................................. 8

## Regulations

*Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*,
    78 Fed. Reg. 10,696, 2013 WL 525347 (Feb. 14, 2013)........................................................... 16

Defendants QBE Specialty Insurance Company ("QBE Specialty"), QBE FIRST Insurance Agency, Inc. ("QBE FIRST"), and Praetorian Insurance Company ("Praetorian") (collectively, "QBE Defendants") hereby move to dismiss Plaintiff's Class Action Complaint, ECF No. 1 ("Compl."), pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff alleges that the QBE Defendants and Defendant PennyMac Loan Services, LLC ("PennyMac") participated in a scheme to overcharge him for lender-placed insurance ("LPI"). LPI is hazard insurance obtained by mortgage lenders or servicers to protect mortgaged properties when borrowers fail to maintain the homeowner's insurance required by their mortgage agreements.  Plaintiff alleges that after he breached his mortgage by failing to maintain his own insurance, PennyMac purchased LPI from the QBE Defendants to cover his uninsured property.

"Plaintiff does *not* challenge" PennyMac's right to purchase LPI for his property.  Compl. ¶ 10.  Nor does he dispute receiving multiple warning letters telling him about LPI (including its potentially higher price) and expressly encouraging him to obtain his own, cheaper insurance. Instead, Plaintiff's primary allegation—which is false—is that the QBE Defendants paid "kickbacks" to PennyMac in exchange for the exclusive right to issue LPI policies to its borrowers.  Plaintiff claims this "scheme" improperly "inflated" the price of his LPI premiums. Accordingly, the Complaint asserts claims against the QBE Defendants for (i) tortious interference with a business relationship; (ii) unjust enrichment; and (iii) violating the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(c) and (d).

These claims fail for the following reasons:  **First**, Plaintiff's claims related to the cost of his LPI premiums were fully adjudicated in a prior state foreclosure action and are thus barred by the *Rooker-Feldman* and collateral estoppel doctrines.  **Second**, Plaintiff's claims premised on

1

"kickbacks" relating to his LPI policies insured by Praetorian are barred by the filed-rate doctrine.

**Third**, Plaintiff's attempt to assert claims on behalf of a sweeping subclass of borrowers with mortgage agreements with any and all mortgage servicers—entirely unrelated to the allegations in the Complaint, Plaintiff's relationship with his own servicer, or the alleged scheme between the QBE Defendants and PennyMac—fails because he lacks standing to pursue such claims. **Finally**, Plaintiff's allegations otherwise fail to state a claim upon which relief can be granted.[1]

## FACTUAL ALLEGATIONS[2]

### A.     Overview of Lender-Placed Insurance and Plaintiff's Mortgage

Residential mortgages, like Plaintiff's, typically require borrowers to maintain continuous homeowner's insurance to protect both their interest in the property and the lender's interest in securing the collateral underlying its loan.  Compl. ¶¶ 16, 34, 59.  If borrowers fail to maintain the required insurance, lenders are authorized to "obtain insurance coverage" at the "Borrower's expense," which "might significantly exceed the cost of insurance [the] Borrower could have [otherwise] obtained."  *Id.* ¶ 59 (quoting Cooper Mortg. ¶ 5); *id.* ¶¶ 58-65.  Lenders typically undertake this function through a third-party mortgage servicer, like PennyMac, who, in the event of an insurance lapse, will (i) notify the borrower of the lapse and provide him an opportunity to obtain coverage; and, if coverage is not obtained, (ii) purchase insurance and bill the borrower for the cost.  *Id.* ¶¶ 34, 37-38.  Insurance obtained in this manner is known as LPI.

### B.     Plaintiff's Insurance Experience

Plaintiff alleges that, after he breached his mortgage by failing to maintain his own insurance, PennyMac, his mortgage servicer, obtained LPI from the QBE Defendants for his

---

[1] To the extent arguments in PennyMac's concurrently filed Motion to Dismiss ("PennyMac's Motion") also warrant dismissal of the QBE Defendants, they are incorporated herein by reference.

[2] These allegations are taken from the Complaint.  The QBE Defendants do not admit them by including them here, but merely reference them for purposes of resolving this Motion.

property in May 2013.  *Id.* ¶¶ 60-66.  Prior to this, PennyMac sent Plaintiff a series of notices that (i) reminded him of his insurance obligation and warned that PennyMac would purchase LPI for his property if he failed to provide proof of coverage; (ii) disclosed the exact LPI premium amount, and the criteria on which it was based; (iii) stated that LPI may be more expensive and provide less coverage than insurance Plaintiff could obtain on his own; and (vi) stated that, if he later provided proof of coverage, he would be refunded any charges for periods in which he had his own insurance.  *See* Decl. of John Meadows ¶¶ 8-13, Exs. B-G ("Meadows Decl."), attached hereto as **Exhibit 1**;[3] *see also* Compl. ¶¶ 37-38, 60-65 (describing contents of LPI notices). Several letters also "strongly encourage[d] [Plaintiff] to immediately purchase" his own voluntary insurance to avoid the cost of LPI.  Meadows Decl. Exs. B, E, F.  After he repeatedly ignored these warnings, PennyMac was forced to purchase LPI for his uninsured property.

Prior to this lawsuit, PennyMac's affiliate brought a foreclosure action against Plaintiff for not paying his mortgage.  *See* PennyMac's Motion, Comp. Ex. C at 2.  The foreclosure was prosecuted by PennyMac, the affiliate's servicer.  *Id.* at 4, 6, 47-50.  After Plaintiff appeared through counsel and answered, *id.* at 38, summary judgment was entered in PennyMac's favor, and included $30,105.67 in LPI premiums due to Plaintiff's failure to maintain his own insurance, *id.* at 61-66.  Plaintiff did not appeal this judgment.

---

[3] Plaintiff's lawsuit is premised on an alleged LPI "scheme" that Plaintiff claims, among other things, is based on PennyMac and the QBE Defendants sending "letters or notices" to him concerning his LPI.  Compl. ¶ 38; *see, e.g.*, *id.* ¶¶ 154-59.  Thus, the Court may properly consider the LPI notices attached to the Meadows Declaration, which are central to Plaintiff's claims.  *Burns v. Rice*, 39 F. Supp. 2d 1350, 1353 n.2 (M.D. Fla. 1998), *aff'd*, 210 F.3d 393 (11th Cir. 2000) (document integral to, or explicitly relied upon by, the complaint can be considered without converting motion to dismiss into summary judgment motion); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity.").

### C.  The QBE Defendants

QBE Specialty and Praetorian are licensed insurance companies that issued two hazard LPI policies for Plaintiff's property.  Compl. ¶¶ 7-8, 37, 62, 65; *see* Meadows Decl. ¶ 4, Exs. D, G.  QBE FIRST is the insurance agent for QBE Specialty and Praetorian and contracts with mortgage servicers, like PennyMac, to monitor loans in their servicing portfolios for adequate property insurance, send the LPI notices described above if there is a lapse, and procure LPI from insurers if necessary.  Compl. ¶¶ 9, 36-38.  If procured, PennyMac paid the policy's annual premium to the insurers, and then passed on that premium cost to the borrower.  *See id.* ¶¶ 41-42.

### D.  The QBE Defendants' Alleged "Scheme" with PennyMac

Plaintiff's central claim is that his LPI premiums were "inflated" as a result of a "scheme" between PennyMac and the QBE Defendants, whereby the QBE Defendants paid "kickbacks" to PennyMac—in the form of commissions, low-cost services, and expense reimbursements—in exchange for the right to issue LPI policies for the mortgages it services.  *See, e.g.*, *id.* ¶¶ 2, 11-14, 36-53.  Because these "kickbacks" from the QBE Defendants to PennyMac were not subtracted from his LPI premiums, Plaintiff asserts they were improperly "inflated" beyond their actual cost. *See, e.g.*, *id.* ¶ 11.  He also alleges that the LPI notices he received were misleading because they did not inform him about the scheme or that "he would be charged illegitimate amounts beyond PennyMac's cost of coverage."  *Id.* ¶¶ 61-69.  Based on these allegations, Plaintiff asserts claims on behalf of (i) classes of borrowers with mortgage loans serviced by PennyMac, Plaintiff's servicer, who were charged for LPI issued by the QBE Defendants; and (ii) a class of borrowers with mortgage loans serviced by any and all mortgage servicers, other than Plaintiff's servicer, who were charged for LPI issued by the QBE Defendants.

4

## ARGUMENT

I.     **PLAINTIFF'S CLAIMS HAVE ALREADY BEEN RESOLVED BY A FLORIDA STATE COURT AND ARE THUS BARRED BY THE *ROOKER-FELDMAN* DOCTRINE AND COLLATERAL ESTOPPEL**

The *Rooker-Feldman* doctrine "precludes the lower federal courts from reviewing state court judgments." *Alvarez v. Att'y Gen.*, 679 F.3d 1257, 1262 (11th Cir. 2012). Specifically, it bars "federal court jurisdiction where the issue before the federal court was 'inextricably intertwined' with the state court judgment," such that a successful federal claim would either (i) "'nullify' the state court judgment," or (ii) conclude "'that the state court wrongly decided the issues.'" *Id.* at 1262-63. Here, Plaintiff's claims challenging the price of his LPI premiums "were previously raised and addressed by a final [state court] foreclosure judgment issued against" Plaintiff and in favor of PennyMac. Omnibus Order at 2, *Berene v. Nationstar Mortg. LLC*, No. 14-cv-61153 (S.D. Fla. Feb. 5, 2016), attached hereto as **Exhibit 2**. Specifically, as set forth in PennyMac's Motion, the Florida state court in its Final Judgment of Foreclosure ruled "[o]n the evidence presented" that Plaintiff owed, among other sums, $30,105.67 to PennyMac for his LPI premiums. *See* PennyMac's Motion, Comp. Ex. C at 61. Thus, for Plaintiff to succeed on his claims here—which are premised on the price of his LPI premiums—this Court must either "nullify" that judgment or find it was wrongly decided, both of which the *Rooker-Feldman* doctrine prohibits. This conclusion applies equally to the QBE Defendants even though they were not parties to the state foreclosure action. *See, e.g.*, *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 891 (11th Cir. 2008) (applying doctrine to dismiss claims against parties and non-parties to prior state foreclosure action).

For similar reasons, Plaintiff's LPI claims against the QBE Defendants are barred by the doctrine of collateral estoppel, which prevents relitigation of the same issues between the same parties, or their privies, in connection with a different cause of action. *See M.C.G. v.*

*Hillsborough Cty. Sch. Bd.*, 927 So. 2d 224, 226 (Fla. Dist. Ct. App. 2006).  As explained above, and in PennyMac's Motion, Plaintiff's challenge to the price of his LPI premiums was conclusively determined in the state foreclosure action.  While the QBE Defendants were not parties to the state action, collateral estoppel nonetheless bars Plaintiff's claims against them here because the doctrine applies equally to parties in the prior litigation as well as "their privies."  *Se. Fidelity Ins. v. Rice*, 515 So. 2d 240, 242 (Fla. Dist. Ct. App. 1987).  Here, the QBE Defendants (*i.e.*, the insurers) are in privity with PennyMac (*i.e.*, the insured) with respect to the insurance claims at issue because Plaintiff alleges that PennyMac purchased an insurance contract from the QBE Defendants that insured Plaintiff's property.  *See* Compl. ¶ 37; *Se. Fidelity*, 515 So. 2d at 242 (insurer and insured are in privity); *AMEC Civil, LLC v. PTG Constr. Servs. Co.*, 106 So. 3d 455, 456 (Fla. Dist. Ct. App. 1987) ("'Privity is a mutuality of interest . . . and includes privity of contract, the connection or relationship which exists between contracting parties.'").[4]

## II. THE FILED-RATE DOCTRINE BARS PLAINTIFF'S CLAIMS PREMISED ON LPI ISSUED BY PRAETORIAN

Under a recent seminal opinion issued by the Second Circuit in *Rothstein v. Balboa Insurance Co.*, 794 F.3d 256 (2d Cir. 2015)—and subsequently followed by numerous courts, including in this District—Plaintiff's claims premised on allegedly inflated LPI premiums issued by Praetorian must be dismissed under the filed-rate doctrine.  This doctrine bars judicial recourse for parties alleging that a rate filed with and approved by a regulator is too high, unfair, or unlawful.  *See, e.g.*, *Taffet v. Southern Co.*, 967 F.2d 1483, 1490 (11th Cir. 1992).  "Simply stated, the doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers."

---

[4] Because the QBE Defendants are in privity with PennyMac, *res judicata* also bars Plaintiff's LPI claims against the QBE Defendants, as explained in PennyMac's Motion which is incorporated by reference herein.

*Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).  The doctrine's rationale is two-fold.  First, it preserves a regulator's authority to determine the reasonableness of rates and prohibits courts from second-guessing that determination.  *See Uniforce Temp. Pers., Inc. v. Nat'l Council on Comp. Ins., Inc.*, 892 F. Supp. 1503, 1512 (S.D. Fla. 1995).  Second, the doctrine ensures that regulated entities charge only those rates that have been approved, thereby preventing discrimination against non-party consumers.  *See id.*

While district courts differed on whether the filed-rate doctrine applies to LPI "kickback" claims,[5] things changed in 2015 when the Second Circuit in *Rothstein* became the first U.S. Court of Appeals to directly rule on this issue, providing much-needed guidance to courts around the country.  Specifically, the court correctly held that the filed-rate doctrine bars claims that challenge filed LPI rates, like those asserted here, "even if [such claims] can be characterized as challenging something other than the rate itself" (*i.e.*, "kickbacks").  *Rothstein*, 794 F.3d at 262; *see id.* at 261 (LPI rates approved by the governing regulatory agency are "'per se reasonable and unassailable in judicial proceedings brought by ratepayers'").  Indeed, in just the last few months, district courts in California, New York, *and Florida* adopted *Rothstein* and dismissed identical LPI "kickback" claims on that very basis.  *See Trevathan v. Select Portfolio Servicing, Inc.*, No. 15-61175, 2015 WL 6913144, at *1, 3 (S.D. Fla. Nov. 6, 2015) (J., Dimitrouleas) (dismissing identical LPI "kickback" claims under filed-rate doctrine and *Rothstein*); *Haddock v. Countrywide Bank, NA*, No. 14-6452, 2015 WL 9257316, at *18-19 (C.D. Cal. Oct. 27, 2015) (same); *Lyons v. Litton Loan Servicing LP*, No. 1:13-cv-513, 2016 WL 415165, at *8-13 (S.D.N.Y. Feb. 2, 2016) (same); *Clarizia v. Ocwen Fin. Corp.*, No. 1:13-CV2907, 2016 WL

---

[5] *Compare Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 553-54 (S.D.N.Y. 2014) (applying filed-rate doctrine to dismiss LPI kickback claims), *and Roberts v. Wells Fargo Bank, N.A.*, No. 12-200, 2013 WL 1233268, at *13 (S.D. Ga. Mar. 27, 2013) (same), *with Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1081-83 (N.D. Cal. 2012) (finding doctrine inapplicable).

439018, at *3 (S.D.N.Y. Feb. 2, 2016) (same).[6]  The same conclusion is appropriate here, as

Plaintiff's claims premised on Praetorian's LPI are identical to those rejected in *Rothstein* and its

growing, and unanimous, progeny.

Here, Praetorian issued one LPI policy to Plaintiff.  *See* Meadows Decl. ¶ 4, Ex. G.[7]

Praetorian is an insurance carrier in Florida whose LPI rates have been filed with and approved

by the Florida Office of Insurance Regulation ("OIR"), Compl. ¶ 8, the regulatory agency

charged under Florida law with "regulating insurance rates . . . to the end that they shall not be

excessive, inadequate, or unfairly discriminatory."  Fla. Stat. §§ 627.031(1)(a), 627.062(1); *see*

*generally* Fla. Stat. Ch. 627, Pt. I.  Under this statutory scheme, Praetorian submitted its rate

filings to the OIR, which reviewed and approved them.  *See* Meadows Decl. ¶¶ 5-6, Ex. A

(Praetorian rate filings).[8]  The premium for Plaintiff's LPI policy was then calculated based on

these filed and approved rates, as required by Florida law.  *Id.* ¶¶ 6-7.

---

[6] These cases are by no means the first district courts to apply the doctrine to LPI kickback claims, but they are the latest, and only, cases to address the doctrine in the LPI context after *Rothstein*.  *See, e.g.*, *Miller*, 994 F. Supp. 2d at 553-54 (applying doctrine to LPI claims based on "unreasonably high premiums" and alleged "manipulation" of LPI market); *Curtis v. Cenlar FSB*, No. 13-3007, 2013 WL 5995582, at *3 (S.D.N.Y. Nov. 12, 2013) (same); *Decambaliza v. QBE Holdings, Inc.*, No. 13-cv-286, 2013 WL 5777294, at *7 (W.D. Wis. Oct. 25, 2013) ("Allowing plaintiff to challenge [approved rates] would contravene the . . . purposes of the filed rate doctrine."); *Singleton v. Wells Fargo Bank, N.A.*, No. 12-216, 2013 WL 5423917, at *2 (N.D. Miss. Sept. 26, 2013) (same); *Roberts*, 2013 WL 1233268, at *13 (same).

[7] The Meadows Declaration is properly considered here because the filed-rate doctrine implicates Plaintiff's standing under Rule 12(b)(1).  *See Morales v. Att'ys' Title Ins. Fund, Inc.*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997) ("At the core of the filed rate doctrine is the issue of standing."); *In re Title Ins. Antitrust Cases*, 702 F. Supp. 2d 840, 849 (N.D. Ohio 2010) (explaining that "[t]he filed rate doctrine is merely a judicially created restriction on remedies and standing").  Because Plaintiff's standing, and therefore the Court's subject matter jurisdiction, is in question, "the district court 'may consider extrinsic evidence such as testimony and affidavits.'"  *Makro Capital of Am., Inc. v. UBS AG*, 543 F.3d 1254, 1258 (11th Cir. 2008).

[8] The Court may consider Praetorian's rate filings in connection with this Motion because the documents are public records whose accuracy can be readily ascertained.  *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) (relying on Fed. R. Evid. 201(b)).

8

Because the OIR approved Praetorian's rates, under *Rothstein* and its progeny, the filed-rate doctrine prohibits Plaintiff from challenging those rates, any component of the rates, or the premiums calculated from the rates.  Like in those cases, Plaintiff's allegations are that he paid too much for "inflated" LPI premiums because they were not reduced by the cost of "kickbacks." Compl. ¶¶ 10-14, 19, 35-36, 42-55.  As *Rothstein* and its progeny recognized, any judicial inquiry into such allegations violates the doctrine's twin principles, thus requiring dismissal.

First, this inquiry would require the Court to review Praetorian's approved LPI rates because Plaintiff alleges "kickbacks" were included in his premiums, which are set based on those rates.  To calculate damages, it would thus be "necessary [for this Court] to measure the difference between the properly approved . . . insurance rates paid by plaintiffs and those mythical rates which would have been applicable but for the defendants' concerted activity." *Uniforce*, 892 F. Supp. at 1512; *see Rothstein*, 794 F. 3d at 262-63 ("[A]ny attempt to determine what part of the rate previously deemed reasonable was a result of the fraudulent acts would require determining what rate would have been deemed reasonable absent the fraudulent acts, and then finding the difference between the two."); *Roberts*, 2013 WL 1233268, at *10 (this inquiry "would, in effect, result in a judicial determination of the reasonableness of" LPI rates). Under the filed-rate doctrine, this "undertaking is not within the province of the courts but should reside with the respective state regulators with authority over rate-setting."  *Uniforce*, 892 F. Supp. at 1512; *see Rothstein*, 794 F.3d at 263 ("[W]hether insurer-provided services should have been reflected in the calculation of LPI is not for us to say; under the nonjusticiability principle, the question is reserved exclusively to the regulators."); *Trevathan*, 2015 WL 6913144, at *3 (holding that judicial inquiry into alleged "'kickback[s]' present in the inflated rate" violates nonjusticiability principle).

Second, if Plaintiff was able to recover the portions of his LPI premiums that allegedly included "kickbacks" or were otherwise "excessive," he would not pay the rate approved by the OIR but, instead, would pay a lower premium than non-party borrowers, in violation of the nondiscrimination principle.  *See Rothstein*, 794 F. 3d at 263-64 (dismissing claims under the doctrine because if the court awarded damages to plaintiffs, they would "pay[] preferential rates for LPI" while non-party borrowers would pay the higher, filed and approved rates); *Trevathan*, 2015 WL 6913144, at *3 (LPI "kickback" claims violate the nondiscrimination principle).

At bottom, Plaintiff's claims challenge Praetorian's filed LPI rates and thus cannot proceed.  If he recovered the portions of premiums he deems unreasonable, the Court would undermine the OIR's judgment on the reasonability of approved rates and cause Plaintiff to pay less than the approved OIR rate.  This is precisely what the filed-rate doctrine prohibits.

## III.     PLAINTIFF LACKS STANDING TO ASSERT CLAIMS ON BEHALF OF HIS OMNIBUS SUBCLASS OF BORROWERS WHO HAVE MORTGAGE CONTRACTS WITH, AND SERVICED BY, UNRELATED SERVICERS

Plaintiff's counsel's initial attempt to create an omnibus class of borrowers with different mortgage servicers has *already* been rejected by the Judicial Panel on Multidistrict Litigation ("JPML") and, as described below, should not be permitted here for the same reasons.

Where a named plaintiff's claims are based on his relationship with specific defendants, he lacks standing to assert claims on behalf of a class whose members had a relationship with *different* entities.  *See Lindquist v. Farmers Ins. Co. of Ariz.*, No. 06-597, 2008 WL 343299, at *10-11 (D. Ariz. Feb. 6, 2008) (plaintiff has standing to assert claims on behalf of class of customers of insurer with whom plaintiff had insurance contract, but has no standing to represent customers of other insurers with whom plaintiff has no contractual relationship); *id.* at 10 (rejecting "proposition that by entering into a contract with one defendant, a plaintiff has standing to pursue class action claims on behalf of class members who had separate contracts

with" other companies that do business with defendants); *Forsythe v. Sun Life Fin., Inc.*, 417 F. Supp. 2d 100, 118-19 (D. Mass. 2006) (shareholders with shares in certain mutual funds lacked standing to represent class of shareholders of other funds); *In re Eaton Vance Corp. Sec. Litig.*, 220 F.R.D. 162, 171 (D. Mass. 2004) (plaintiffs lacked standing to represent class suing four mutual funds where they only invested in two, even when all were managed by same individuals).

Here, Plaintiff purports to represent a "Florida All Mortgage Servicer Class" of *any and all borrowers* in Florida charged for hazard LPI issued by the QBE Defendants "*through any mortgage servicer*"—not just PennyMac.  Compl. ¶ 71 (emphasis added).  However, "[a]t all times relevant to the allegations . . . [Plaintiff's] mortgage loan was owned and/or serviced by PennyMac."  *Id.* ¶ 58.  That is, Plaintiff's mortgage contract was with PennyMac, Plaintiff's mortgage loan was serviced by PennyMac, and all of Plaintiff's claims arise out of his mortgage with PennyMac and the LPI the QBE Defendants issued to PennyMac pursuant to that mortgage.  In fact, the Complaint is devoid of any alleged relationship between Plaintiff and any servicer other than PennyMac, and nor does it contain any allegation whatsoever regarding a scheme to harm Plaintiff among the QBE Defendants and any servicer other than PennyMac.  Accordingly, Plaintiff has no standing to assert claims on behalf of a class of borrowers with mortgages with *other* servicers based on LPI issued to these *other* servicers.

Indeed, a federal court already has rejected a similar attempt by Plaintiff's counsel to consolidate these same LPI claims among borrowers with different mortgage servicers, even where there were common LPI insurers, including the QBE Defendants.  In 2012, JMPL refused to consolidate such LPI cases because "[t]he cases involve . . . different lender agreements with insurers . . . and different mortgage loan documents."  *In re Mortg. Lender Force-Placed Ins. Litig.*, 895 F. Supp. 2d 1352, 1353 (J.P.M.L. 2012) (Mem.).  The JPML noted that each class

11

action involves "a different [LPI] program governed by a lender-specific agreement negotiated with an insurance company." *Id.* Even though "all actions [the JPML considered] focus[ed] on an alleged industry-wide practice among banks and insurers concerning . . . the placement of" LPI, it noted that the mortgages "var[ied] widely as to key matters such as the amount of insurance coverage required, the payment of commissions, and other rights of the borrower and lender." *Id.* The same rationale applies here, where Plaintiff attempts to assert claims on behalf of an omnibus class of disparate borrowers, with disparate mortgages, among myriad (and unnamed) mortgage servicers, *none of whom* have any relationship to Plaintiff nor involvement in any "scheme" with the QBE Defendants to harm Plaintiff. Plaintiff's attempt to shoehorn dozens of unrelated class actions into a single class before this Court is nothing more than an attempt to do what the JPML already rejected, and Plaintiff's claims premised on the QBE Defendants' relationships with dozens of mortgage servicers with no relationship whatsoever to Plaintiff must be dismissed for lack of standing.

## IV.     PLAINTIFF FAILS TO STATE ANY CLAIMS UNDER RULE 12(B)(6)

Under Rule 12(b)(6), the complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must be "plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although allegations in the complaint are assumed true, they must be more than mere labels and conclusions or a mere formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 545. Legal conclusions are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679.

### A.     Plaintiff Fails to State Claims for Tortious Interference with a Business Relationship or Unjust Enrichment Because the QBE Defendants' Conduct Was Authorized by Plaintiff's Mortgage

Plaintiff's tortious interference and unjust enrichment claims are premised on nearly identical allegations: that, as a result of the purported scheme where the QBE Defendants paid

"kickbacks" to PennyMac, PennyMac charged Plaintiff "inflated" LPI premiums in violation of

his rights under the mortgage agreement, and the QBE Defendants were unjustly enriched under

this scheme.  Compl. ¶¶ 113-17, 119-26.  However, these allegations fail to state either claim.

As detailed in PennyMac's Motion, PennyMac did not breach Plaintiff's mortgage

because, among other reasons, the mortgage authorized the placement of LPI on his property

when he failed to maintain insurance, and disclosed that its cost may "significantly exceed" the

cost of voluntary insurance.[9]  *See* Compl. ¶ 59 (quoting Cooper Mortg. ¶ 5).  Indeed, as stated,

"Plaintiff does *not* challenge" the placement of LPI on his property.  *Id.* ¶ 10.  Accordingly,

because his tortious interference claim is predicated on a breach of the mortgage that never

occurred, it must be dismissed as a matter of law.  *See Circeo-Loudon v. Green Tree Servicing,*

*LLC*, No. 14-21384, 2014 WL 4219587, at *4 (S.D. Fla. Aug. 25, 2014) ("The allegations

regarding tortious interference are based entirely on Plaintiffs' mortgage . . . . Accordingly,

absent plausible allegations of a breach of Plaintiffs' mortgage, the tortious interference claim"

fails." (citations omitted)); *MDT Pers., LLC v. Camoco, LLC*, No. 8:10-cv-2545, 2010 WL

5535066, at *2 (M.D. Fla. Dec. 8, 2010) (holding tortious interference claim requires breach of

underlying contract on which claim is based).  Similarly, because the QBE Defendants' conduct

in issuing LPI was authorized by Plaintiff's mortgage, they could not have been unjustly

enriched by the fruits of that conduct, especially when the mortgage and numerous LPI notices

warned Plaintiff of the consequences of LPI, including its costs.  *See Gibson v. Chase Home Fin.,*

*LLC*, No. 8:11-cv-1302, 2011 WL 6319401, at *5 (M.D. Fla. Dec. 16, 2011) (dismissing unjust

enrichment claim based on LPI charges because servicer received only that for which it

---

[9] *See Degutis v. Fin. Freedom, LLC*, 978 F. Supp. 2d 1243, 1262-63 (M.D. Fla. 2013) (holding
that because mortgage authorized LPI "in an amount determined by the lender," the mortgage
was not breached when LPI was issued for the plaintiff's otherwise uninsured property); *Cohen
v. Am. Sec. Ins. Co.*, 735 F.3d 601, 612-13 (7th Cir. 2013) (same).

contracted and only that to which plaintiff agreed); *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So.

2d 322, 331-32 (Fla. Dist. Ct. App. 2007) (noting that parties entered into agreements and

received exactly what they bargained for and defendant thus was not unjustly enriched).[10]

In an identical context, the Seventh Circuit rejected the entire premise that insurers could

be liable for issuing LPI where a borrower breached his mortgage by failing to maintain

insurance, even where "kickbacks" were associated with the LPI.  *See Cohen*, 735 F.3d at 613.

In *Cohen*, the court eschewed "use of the pejorative term 'kickback,'" calling it "not meaningful"

and stating that "simply calling the commission a kickback doesn't make it one."  *Id.* at 611-12.

Then the court held that "maintaining property insurance was [plaintiff]'s contractual obligation

and she failed to fulfill it; because the consequences of that failure were clearly disclosed to her,

none of her claims for relief can succeed."  *Id.* at 604.

The Eleventh Circuit recently adopted *Cohen*'s rationale in a similar LPI case.  *See Feaz*

*v. Wells Fargo Bank, N.A.*, 745 F.3d 1098 (11th Cir. 2014).  In that case, the court dismissed all

claims premised on allegedly improper "kickbacks" because the mortgage authorized LPI and

plaintiff received LPI notices that similarly disclosed that LPI would be more expensive than

voluntary coverage.  *Id.* at 1110-11 (agreeing with *Cohen* that "'simply calling a commission a

kickback doesn't make it one'" and dismissing identical LPI claims under *Cohen*'s rationale).

---

[10] Plaintiff's unjust enrichment claim fails for the additional reason that he does not allege the QBE Defendants *retained* the objectionable components of Plaintiff's LPI premiums, namely, the alleged "kickbacks."  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (plaintiff must plead "defendant's acceptance and retention" of inequitable benefit).  Instead, he repeatedly alleges that the QBE Defendants *paid* the purported kickbacks *to PennyMac*.  Compl. ¶ 121 ("QBE paid significant monies to PennyMac . . . in kickbacks, commissions"); *see also id.* ¶¶ 11, 14, 19, 35, 42 (same).  Thus, the QBE Defendants cannot be said to have retained any improper benefit.  *See Smith v. SunTrust Mortg. Inc.*, No. 13-0739, 2013 WL 5305651, at \*10 (C.D. Cal. Sept. 16, 2013) (dismissing similar LPI unjust enrichment claim because plaintiff did not allege that insurer "retained a benefit," only "how [the insurer] benefitted" *the servicer*).

Like the plaintiffs in *Feaz* and *Cohen*, Plaintiff alleges he was charged excessive LPI premiums as a result of so-called kickbacks.  Compl. ¶¶ 10-14, 35, 115-16, 129-30.  And just like in those cases, PennyMac was required to purchase LPI when Plaintiff breached the mortgage's continuous insurance requirement; the mortgage did not prohibit PennyMac from recovering its costs or receiving compensation; and the consequences of Plaintiff's breach (*e.g.*, that LPI was more expensive than voluntary coverage) were all clearly disclosed.  Accordingly, under binding Eleventh Circuit precedent in *Feaz*, and persuasive precedent in *Cohen*, Plaintiff's "kickback" allegations cannot support his claims for tortious interference and unjust enrichment.[11]

## B.   Plaintiff Fails to State a RICO Claim Under Section 1962(c)

Many courts, including in this District, dismiss RICO claims similar to Plaintiff's in the LPI context.  This Court should follow the logic of that authority, and based on the flawed allegations described below, find the same result is warranted here.  To state a claim under Section 1962(c), Plaintiff had to allege that the QBE Defendants engaged in (i) conduct (ii) of an enterprise (iii) through a pattern of racketeering activity.  18 U.S.C. § 1962(c).  Plaintiff alleges that the QBE Defendants engaged in a racketeering scheme to charge him inflated LPI premiums predicated on deceptive LPI notices that misrepresented his LPI premiums as the "cost" of insurance when, in fact, they were "inflated" by the alleged "kickbacks."  *See* Compl. ¶¶ 154-59, 162.  This claim fails for three reasons.

---

[11] While some courts have declined to apply *Feaz* and *Cohen* to dismiss LPI claims, those cases fail to address, or did not have occasion to address, the importance of the numerous LPI notices, such as here, that disclose all material terms regarding the challenged LPI practices, which, along with the mortgage that authorizes LPI, defeat any claim that the LPI breached Plaintiff's mortgage, interfered with his relationship with PennyMac, or that the QBE Defendants were unjustly enriched.  *E.g.*, *Hamilton v. SunTrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1305 (S.D. Fla. 2014); *Jackson v. U.S. Bank, N.A.*, 44 F. Supp. 3d 1210, 1219 (S.D. Fla. 2014); *Montoya v. PNC Bank, N.A.*, No. 14-20474, 2014 WL 4248208, at *17-18 (S.D. Fla. Aug. 27, 2014).

### 1.    Plaintiff Alleges No Deceptive Conduct and Thus No Fraud

To allege mail or wire fraud as a RICO predicate, as Plaintiff does here, he must plead that the QBE Defendants "(1) intentionally participate[d] in a scheme or artifice to defraud another of money or property, and (2) uses or 'causes' the use of the mails or wires for the purpose of executing the scheme or artifice." *United States v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007). A "scheme to defraud" must involve a misrepresentation "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Beck v. Prupis*, 162 F.3d 1090, 1095 (11th Cir. 1998). Here, the only alleged communication between the QBE Defendants and Plaintiff was through the LPI notices they mailed to him on PennyMac's behalf. Compl. ¶¶ 60-69. These allegations fail to establish a fraud predicate because the notices do not contain misrepresentations or material omissions, and are thus not calculated or likely to deceive.[12]

As discussed above, the LPI notices on which Plaintiff premises his fraud allegations disclosed the key terms of his LPI. Specifically, they reminded him of his obligation to maintain his own insurance and that his failure to meet that obligation would result in LPI. The notices

---

[12] In passing, Plaintiff asserts that part of the RICO scheme involved charging borrowers for "insurance that covered time periods where no claims were made and/or resulted in 'double coverage,'" an allegation sometimes known as "backdating." Compl. ¶ 154(j). Aside from this containing no factual content or connection to the QBE Defendants, it fails because courts across the country recognize that it is lawful and appropriate for LPI to be effective as of the date the borrower's voluntary policy lapses. *See, e.g.*, *Edwards v. Green Tree Servicing, LLC*, No. 5:15CV148, 2015 WL 6777463, at *5 (N.D. Fla. Oct. 22, 2015) (rejecting LPI backdating claims); *Morris v. Green Tree Servicing, LLC*, No. 2:14-CV-01998, 2015 WL 4113212, at *11-13 (D. Nev. July 8, 2015) ("backdated [LPI] was not fraudulent because it protected [the lender's] interest in the property after Plaintiff failed to maintain coverage"); *Cohen*, 735 F.3d at 613 (holding similarly); *Miller*, 994 F. Supp. 2d at 554-55 (rejecting LPI backdating claims).

Nor are these courts alone. The Consumer Financial Protection Bureau, which regulates mortgage servicing, has also made clear that "backdating" LPI is legal and proper. *See Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 Fed. Reg. 10,696, 10,767, 2013 WL 525347 (Feb. 14, 2013) ("[A] servicer may charge a borrower for force-placed insurance the servicer purchased, *retroactive to the first day of any period of time in which the borrower did not have hazard insurance in place.*") (emphasis added).

also provided Plaintiff with information about the cost of his LPI policies, including the exact premium amount, the factors determining the premium, that the premium would be more expensive than insurance Plaintiff could otherwise obtain, and that he would only be charged for the period of his insurance lapse.  In addition, the notices emphatically urged Plaintiff to purchase his own insurance to avoid LPI entirely.  These repeated, express disclosures and admonitions, which Plaintiff ignored, are irreconcilable with his claim that the notices were intended or "calculated to deceive" him into avoiding his own insurance and incurring allegedly excessive LPI charges.  Quite the opposite—the notices all but begged Plaintiff to avoid LPI.

Nor do these notices omit any material term that could reasonably have deceived Plaintiff.  Plaintiff contends that he was misled because the LPI notices omitted that the "actual cost of his policies" included "kickbacks," Compl. ¶ 157, and had he known this alleged fact, he "would not have paid, or would have contested these specific charges," *id.* ¶ 161.  This allegation is illogical.  After Plaintiff breached his obligation to maintain continuous insurance, he had two options under his mortgage: obtain his own insurance or have LPI issued for his property and incur the charges.  It is inconceivable that his decision hinged on the LPI notices informing him about how the Defendants benefitted from his LPI.  *See Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915, 2012 WL 7051318, at *7 (C.D. Cal. Dec. 20, 2012) (dismissing similar RICO claim in part because failure to inform plaintiffs that defendants may profit from LPI is not "a material omission 'reasonably calculated to deceive'").  This is especially true where, as here, the notices repeatedly encouraged Plaintiff to obtain his own, cheaper insurance.

Indeed, numerous courts have held that virtually identical LPI letters are not misleading or otherwise actionable under RICO.  For instance, the court in *Wilson v. EverBank, N.A.* ("*Wilson I*") dismissed a similar RICO claim by wholly rejecting the argument that such LPI

notices were calculated to deceive.  77 F. Supp. 3d 1202, 1226-27 (S.D. Fla. 2015).  The court based its holding on the letters' ample disclosures that, like here, "warned and disclosed to Plaintiffs that their voluntary coverage lapsed and when it lapsed; that they had an obligation to maintain coverage; that if they did not maintain coverage on their own, [the servicer] would obtain a policy on their property; that the force-placed policy would cost substantially more; that the force-placed policy would inure to [the servicer]'s benefit; and that the increased amount would be charged by [the servicer] to Plaintiffs."  *Id.* at 1226.  The court thus concluded that it "'cannot see how letters that warn of an imminent bad deal and urge one to seek better could possibly be calculated to deceive anyone.'"  *Id.* at 1226-27).

        Moreover, Plaintiff's suggestion that he was harmed because the LPI notices' alleged misrepresentations deprived him of the opportunity to *not pay* for his LPI, Compl. ¶¶ 163-64, is "senseless" because "[l]osing an opportunity to breach a contract cannot constitute a cognizable fraud harm."  *Cohen*, 735 F.3d at 614 (rejecting plaintiff's "theory of damages [which] seems to be that had she known the charges were really kickbacks, she would have breached her contractual duty to pay").  In *Circeo-Loudon* the court similarly rejected plaintiff's theory as "senseless," aptly noting that plaintiffs cannot state a RICO claim on the theory that, had they known their LPI charges included "kickbacks," they would have breached their obligation to pay for insurance.  2014 WL 4219587, at *3.  Numerous other courts have reached the same conclusion.  *See, e.g.*, *Meyer v. OneWest Bank F.S.B.*, 91 F. Supp. 3d 1177, 1184-85 (C.D. Cal. 2015) (holding that disclosures in LPI notices "cannot plausibly be read as evincing fraudulent intent"); *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915, 2012 WL 7071488, at *6-7 (C.D. Cal. Dec. 26, 2012) (holding that disclosures in LPI notices defeated RICO claim).

18

### 2.      Plaintiff Fails to Allege Causation

To plead a RICO claim, a "plaintiff must always establish a proximate-causal, 'direct relation' between the injury and injurious conduct at issue." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014).  Here, the alleged injury, inflated LPI charges, is wholly unrelated to the alleged fraudulent conduct, the content of the LPI notices.  Indeed, Plaintiff does not even attempt to allege that *but for* the LPI notices he would have procured his own insurance to avoid LPI.  Nor could he, as he defaulted on his insurance obligation *before* he alleges he received the deceptive LPI notices.  *See* Compl. ¶ 60.  Thus, Plaintiff's decision to breach his mortgage and incur those charges is, as a matter of law, unrelated to the notices' contents (*i.e.*, he would have breached whether or not he received the notices and regardless of what they said).  Accordingly, this claim fails for lack of causation.  *See Wilson I*, 77 F. Supp. 3d at 1227 (holding that plaintiffs did not plausibly allege "that, but for [defendant's] allegedly fraudulent conduct regarding the [LPI] charges . . . [they] would not have paid the full [LPI] charges but, rather, would have opted either to now get their own insurance . . . or contest the fractional, unauthorized charge."); *Circeo-Loudon*, 2014 WL 4219587, at *3 (dismissing RICO claim because plaintiffs do not explain how "purported mail and wire frauds proximately caused [LPI] when the same insurance would have been placed regardless of the alleged fraud.").

Plaintiff also fails to plead causation because he never alleges he actually read the LPI notices.  Without this, Plaintiff's fraud predicate necessarily fails because, if he did not know the notices' contents, then he could not have been deceived by them.  *Wilson v. EverBank, N.A.* ("*Wilson II*"), No. 14-22264, 2015 WL 1600549, at *5 (S.D. Fla. Apr. 9, 2015) (dismissing similar RICO fraud claim because plaintiffs did not allege they read allegedly deceptive letters).

### 3. Plaintiff's RICO Allegations Do Not Satisfy Rule 9(b)

Fraud-based RICO claims must satisfy Rule 9(b)'s specificity requirement that plaintiffs allege the "who, what, when and where" that would "'alert defendants to the precise misconduct with which they are charged.'" *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1366 (S.D. Fla. 2011). Plaintiff's claim does not satisfy these requirements for two reasons. First, Plaintiff fails to make "specific allegations with respect to the separate Defendants," instead "lump[ing] together" the alleged conduct of the three QBE Defendants and PennyMac without distinction. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1381 (11th Cir. 1997). Second, Plaintiff fails to plead with specificity how the content and manner of the LPI notices misled him. *Id.* at 1380. Nor could he, as the disclosures in the LPI notices, as discussed above, could not have deceived Plaintiff. *Wilson I*, 77 F. Supp. 3d at 1226 (dismissing identical RICO allegations because plaintiffs failed to plead with specificity how LPI notices deceived them into breaching their insurance obligations and instead choosing LPI).

### C. Plaintiff Fails to State a RICO Claim Under Section 1962(d)

Under Section 1962(d), it is unlawful to "'conspire to violate any of' the substantive provisions of the RICO laws." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004). However, where the substantive RICO claim fails, a RICO conspiracy allegation that "simply concludes that the defendants 'conspired and confederated' to commit conduct which in itself does not constitute a RICO violation" cannot survive. *Id.*; *see* Compl. ¶¶ 167-70. Because Plaintiff fails to state a substantive RICO claim, his derivative conspiracy claim also fails.

### CONCLUSION

For the foregoing reasons, the QBE Defendants respectfully request that the Court dismiss all claims asserted against it in the Complaint with prejudice.

Dated:  April 8, 2016

Respectfully submitted,

*/s/ Brian W. Toth*
Brian W. Toth, Esq.
Florida Bar No. 57708
brian.toth@hklaw.com
**Holland & Knight LLP**
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 789-7510
Facsimile: (305) 789-7799

Dustin A. Linden, Esq. (*pro hac vice*)
dlinden@buckleysandler.com
**BuckleySandler LLP**
100 Wilshire Boulevard, Suite 1000
Santa Monica, California 90401
Telephone: (310) 424-3900
Facsimile: (310) 424-3960

*Counsel for QBE Specialty Insurance Company, QBE FIRST Insurance Agency, Inc., and Praetorian Insurance Company*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2016, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve all counsel of record via transmission of Notices of Electronic Filing.

/s/Brian W. Toth
Brian W. Toth